Robert C. Huntley
Patrick J. Miller
Givens Pursley & Huntley, LLP
Park Place, Suite 200
277 North 6th Street
Post Office Box 2720
Boise, ID 83701-2720
Telephone: (208) 388-1200
Telecopier: (208) 388-1201

Earl J. Silbert
Adam S. Hoffinger
Patricia L. Maher
Patrick deGravelles
Schwalb, Donnenfeld & Silbert, P.C.
Suite 300 East
1025 Thomas Jefferson Street, N.W.
Washington, D.C. 20007-5207
Telephone: (202) 965-7910
Telecopier: (202) 337-0676

Attorneys for Petitioner Lon T. Horiuchi

U.S. COURTS

97 OCT 31 PM 12: 44

_____ FILED
CAMERON S. BURKE
CLERK            IDAHO

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| LON T. HORIUCHI, ) | CR 97-097-N-EJL |
| Petitioner, ) |  |
| ) |  |
| v. ) | No. _____ |
| ) |  |
| STATE OF IDAHO, ) | NOTICE OF REMOVAL |
| ) |  |
| Respondent. ) |  |

To the Judges of the United States District Court for the District of Idaho:

The petition of Lon T. Horiuchi respectfully shows:

1. On August 20, 1997, an action was commenced in the District Court of the First Judicial District of the State of Idaho, in and for the County of Boundary, entitled State of Idaho, Plaintiff, v. Lon T. Horiuchi, Defendant, Case No. CR 97-14696, by the service of a Summons (Criminal) and Criminal Complaint, Case No. CR 97-14696, charging Lon T. Horiuchi, a Special Agent (SA) with the Federal Bureau of Investigation (FBI) with involuntary manslaughter in violation of I.C. 18-4006(2). SA Horiuchi accepted service of the Complaint on October 6, 1997. No further proceedings have been had therein. Copies of all process, pleadings and orders served on SA Horiuchi are annexed hereto as Exhibit 1 in accordance with 28 U.S.C. § 1446(a).

2. SA Horiuchi, Petitioner herein, has not been arraigned and no trial date has been set. Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(c)(1), which provides that "a notice of removal of a criminal prosecution shall be filed not later than thirty days after the arraignment in state court, or at any time before trial, whichever is earlier[.]"

3. The above-described action is a criminal action which may be removed to this Court by SA Horiuchi pursuant to the provisions of 28 U.S.C. § 1442(a)(1), which permits removal of a "criminal prosecution commenced in a state court against . . . . any officer of the United States sued in an official or individual capacity for any act under color of such office," when there is a colorable federal defense in the case. Mesa v. California, 489 U.S. 121, 133 (1989).

(a) The Criminal Complaint in the Idaho state action seeks judgment based upon allegations that

> Lon T. Horiuchi, on or about the 22nd day of August, 1992, in the County of Boundary, State of Idaho, did unlawfully, but without malice, kill Vicki J. Weaver, a human being, in the operation of a firearm in a reckless, careless or negligent manner, to wit:

- 2 -

discharging the firearm through the front door of the Weaver residence in an attempt to shoot Kevin Harris as he entered the door from outside, without first determining whether any person other than his intended target was present on the other side of the door, a violation of I.C. 18-4006(2), a felony.

(b)     At the time of his actions giving rise to the prosecution by the State of Idaho, SA Horiuchi was an officer of the United States, namely a Special Agent of the FBI, an agency of the United States.  SA Horiuchi remains employed by the FBI and assigned to the Hostage Rescue Team (HRT).

(c)     SA Horiuchi has been sued in his individual capacity.

(d)     The grounds for removal are as follows:  At all times mentioned in the State of Idaho's Criminal Complaint, SA Horiuchi was acting solely under color of his office as a Special Agent of the FBI, and all of his actions done in connection with the matters set forth in the Criminal Complaint were done by SA Horiuchi in the performance of his duties under color of such office.

On the day before the acts alleged in the Criminal Complaint, August 21, 1997, SA Horiuchi and other members of the FBI's HRT were deployed to Boundary County, Idaho, in response to the killing of a federal marshal. Deputy United States Marshal William Degan had been killed when he and two other federal marshals exchanged gunfire with Randall Weaver, his son Samuel, and their friend Kevin Harris. Unbeknownst to the FBI at the time, Samuel Weaver was also killed during the firefight.

The gunfire had erupted when a group of six federal marshals were scouting an area near a cabin occupied by Randall Weaver and his family, in connection with efforts that had been made for a year and a half to serve Randall Weaver with an arrest warrant following his failure to

appear on federal weapons charges. As three of the marshals walked near the Weaver property, they were confronted by Samuel Weaver, Kevin Harris and Randall Weaver, and the firefight erupted during which both Marshal Degan and Samuel Weaver were fatally wounded.

After the gunfight, the three marshals who were not involved in the shooting left the area to get help. Two other marshals remained with the body of Marshal Degan which they were unable to evacuate. Based on the account of the incident relayed by the first three marshals to leave the scene, the FBI was notified that a federal marshal had been killed, and two marshals remained at the scene with his body. The FBI deployed members of the HRT to Boundary County, Idaho promptly after receiving notice of the incident.

When SA Horiuchi and other members of the HRT arrived in Idaho, they were given a briefing by the Assistant Special Agent in Charge of HRT regarding (1) the incident that had resulted in the death of a federal marshal and (2) the HRT's mission. The HRT members were told, among other things, that Randall Weaver was wanted on a bench warrant and had eluded arrest for more than a year and a half; that Weaver and his family lived on a remote mountaintop and that whenever Weaver or members of his family were observed, including the children, they were armed; that both Randall Weaver and his wife Vicki had expressed extreme hostility to the authority of the federal government and were affiliated with organizations that advocated the violent overthrow of the federal government; that Weaver had been a member of Special Forces and had an extensive cache of weapons at his cabin which he was trained to use; and that his property might have been "booby trapped." It was also reported that Marshal Degan had been killed in a firefight with Randall Weaver, his son and Kevin Harris.

- 4 -

Based on the extreme danger they believed to exist under the circumstances, FBI management formulated rules of engagement for the operation. The rules of engagement provided, in substance, that if any adult male was observed in the vicinity of the cabin with a weapon, deadly force could and should be employed against that person provided a shot could be taken without endangering the children. SA Horiuchi and the other HRT members were briefed on the rules of engagement in the course of their deployment.

On August 22, 1992, SA Horiuchi and other HRT members were deployed to a ridge above the Weaver cabin to gather intelligence around the location of the cabin. SA Horiuchi and his team made their way up to positions approximately 200 yards from the Weaver cabin where Harris and the Weavers were believed to be located. Shortly before 6 o'clock p.m., SA Horiuchi saw and heard an FBI helicopter lift off, and then observed two males and one female exit the cabin. Both men were dressed in dark clothing. SA Horiuchi believed the males were Randy Weaver and Kevin Harris, and the female was one of Weaver's daughters.

SA Horiuchi observed the three individuals move to an area near an outbuilding referred to as the "birthing shed," and then disappear from view. Behind him SA Horiuchi heard the sound of the FBI helicopter which was conducting reconnaissance and surveillance of the area.

When SA Horiuchi saw one of the males, who was later identified as Randall Weaver, come back around the birthing shed into SA Horiuchi's view and raise his weapon, SA Horiuchi believed it was in preparation to fire at the helicopter which he knew to be carrying law enforcement personnel. Fearing for the safety of the agents in the helicopter, SA Horiuchi fired a single shot at the individual to prevent him from firing in the direction of the helicopter. The individual then moved out of SA Horiuchi's sight again.

- 5 -

Seconds later, SA Horiuchi observed the three individuals move from behind the birthing shed and run toward the cabin. SA Horiuchi believed that the last male, who was later identified as Kevin Harris, was the same individual at whom he had just fired. Harris was running toward the cabin carrying a rifle in "port arms" position. SA Horiuchi believed that male had demonstrated his willingness to fire at law enforcement personnel, and had brandished his weapon at the helicopter. Fearing that Harris intended to take cover inside the cabin to return fire, SA Horiuchi fired one shot at him.

When SA Horiuchi fired the second shot, Harris was not yet inside the cabin, but he was moving toward the open door, which opened outward from the cabin. SA Horiuchi aimed at Harris and no one else. Using a standard technique for firing at a moving target (called "leading"), SA Horiuchi fired at Harris and no one else. SA Horiuchi's second shot hit the cabin door and passed through it, hitting Vicki Weaver who, unbeknownst to and unseen by SA Horiuchi, was standing directly behind the opened door. SA Horiuchi never saw Vicki Weaver and did not know she was standing directly behind the door. After the bullet hit Vicki Weaver, it hit Harris, injuring him.

1.    SA Horiuchi is Entitled to Removal Under 28 U.S.C. § 1442(a)(1)

At the time SA Horiuchi fired the shot that killed Vicki Weaver, which is the basis for the state prosecution, he was acting within the scope of his official duties as a Special Agent of the FBI. SA Horiuchi was deployed to Idaho by the FBI for the purpose of rescuing the marshals and assisting in the arrest of the suspects in the murder of Marshal Degan. SA Horiuchi had been briefed that the situation was extremely dangerous because the Weavers were known to be heavily armed, and could be expected to resist arrest violently. They had demonstrated their

willingness to use firearms against law enforcement personnel. In firing both shots, SA Horiuchi was acting in accordance with his training as a Special Agent of the FBI and a member of the HRT.

SA Horiuchi is entitled to have the criminal prosecution against him in Idaho state court removed to this Court, pursuant to 28 U.S.C. § 1442(a)(1) which provides:

> (a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

A federal officer is entitled to removal whenever a prosecution is initiated against him for conduct performed "under color of such office." The "color of office" test is satisfied if there is a "causal connection" between acts performed by the officer under asserted federal authority and the state prosecution, Willingham v. Morgan, 395 U.S. 402, 409 (1969), and there is a "colorable defense" to the prosecution. Mesa v. California, 489 U.S. 121, 129 (1989). The right of removal conferred by § 1442(a)(1) is to be broadly construed. Nationwide Investors v. Miller, 793 F.2d 1044, 1046 (9th Cir. 1986); Kolibash v. Committee on Legal Ethics, 872 F.2d 571 (4th Cir. 1989). The federal officer need not prove at the time of removal that he will ultimately prevail on the federal defense, because the purpose of the removal statute is to give federal officers a federal forum in which to assert the defense. See Arizona v. Manypenny, 451 U.S. 232, 234-36,

- 7 -

242, reh'g denied, 452 U.S. 955 (1981) (federal border patrol agent indicted by State of Arizona for assault with a deadly weapon successfully removed prosecution to federal court).

A.    The Conduct Charged Arises Out of SA Horiuchi's Duty Under Federal Law

SA Horiuchi has been sued in his individual capacity, for acts taken under color of his office as a Special Agent of the FBI, in connection with the apprehension of criminal suspects. At the time of the acts alleged in the Criminal Complaint, SA Horiuchi was authorized under an act of Congress "to carry firearms ... and make arrests ... for any felony cognizable under the laws of the United States if [he has] reasonable grounds to believe that the person to be arrested has committed or is committing such felony." 18 U.S.C. § 3052. When SA Horiuchi fired two shots on August 22, 1992, he was pursuing suspects believed to have violated 18 USC § 1114, a felony, by killing an officer of the United States while the officer was engaged in the performance of official duties. There is a clear causal connection between SA Horiuchi's official actions as a federal law enforcement officer and the prosecution by the State of Idaho.

B.    SA Horiuchi Has a Colorable Federal Defense

A federal law enforcement officer is entitled to immunity under the Supremacy Clause of the United States Constitution (art. VI, cl. 2)[1] for acts reasonably undertaken in the discharge of his federal duties.  SA Horiuchi cannot be prosecuted for a crime under Idaho law for an act he performed as a federal officer under a law of the United States.  In this case, SA Horiuchi has a

---

[1]    Article VI, cl. 2 of the Constitution provides:

> The Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

federal defense under the Supremacy Clause which clearly satisfies the requirement of a "colorable" federal defense.

The landmark case in the application of the Supremacy Clause to state criminal charges is In re Neagle, 135 U.S. 1 (1890). The state of California filed murder charges against a Deputy U.S. Marshal assigned to protect a Supreme Court Justice after the marshal shot and killed a man who threatened the Justice. The Supreme Court dismissed the murder charge, and recognized that the Supremacy Clause prevents a federal officer from being held on a state criminal charge where the alleged crime arose during performance of his federal duties.

The standards articulated by the Supreme Court in Neagle for determining whether federal officers are immune from state criminal prosecution remain in effect today. Under Neagle, a state does not have jurisdiction to prosecute a federal officer for conduct facially violative of the state's criminal code if (1) the federal agent was performing an act which he was authorized to do by the law of the United States, and (2) in performing that authorized act, the federal officer's conduct was necessary and proper. Kentucky v. Long, 837 F.2d 727, 744 (6th Cir. 1988); see also Arizona v. Manypenny, supra, 451 U.S. at 236-37 (federal officer immune from prosecution under state law if he acted under color of federal law and in honest belief shooting suspect was necessary for execution of his federal duties).

As set forth above, SA Horiuchi was undeniably acting as a federal officer, performing duties authorized by and in furtherance of federal law at the time of the acts charged in the Idaho Criminal Complaint. After an exhaustive investigation, the Department of Justice concluded, inter alia, that when SA Horiuchi fired shots, he was acting within the guidelines set forth by his superiors.

In addition to acting under laws of the United States, SA Horiuchi's conduct was "necessary and proper," as that standard has been applied since Neagle. A federal officer's conduct may be "necessary and proper" to the accomplishment of his duty even if it was not perfect, and even if it was not literally "necessary," if the officer had an honest and reasonable belief that his conduct was necessary in the performance of his duty. See In re Neagle, supra (federal officer who killed assailant whom he reasonably believed to be reaching for a knife held immune from state prosecution, even though assailant did not have a knife, because officer's act was necessary and proper in the performance of his duties to protect a Supreme Court Justice); Clifton v. Cox, 549 F.2d 722 (9th Cir. 1977)(narcotics officer who shot and killed an unarmed suspect whom he mistakenly believed had shot his partner, when his partner had actually tripped and fallen, held immune from state prosecution because officer's use of deadly force was reasonable in the circumstances).

A federal officer "need not show that his actions were in fact necessary or in retrospect justifiable, but only that he reasonably thought them to be so." Connecticut v. Marra, 528 F. Supp. 381, 387 (D. Conn. 1981). Thus, even an officer's "mistake in judgment" or a "botched operation" will not alone subject a federal agent to state court prosecution. Kentucky v. Long, supra, 837 F.2d at 747.

In In re McShane, 235 F. Supp. 262 (N.D. Miss. 1964), a federal marshal was indicted by a Mississippi grand jury for inciting a riot which led to the death of two individuals. McShane was at the University of Mississippi in 1962, acting in his official capacity to implement court orders for the admission of James Meredith, a black student, to the university. When McShane believed an angry crowd opposed to Meredith's admission had gotten out of control, he ordered

- 10 -

the use of tear gas and a riot erupted during which two people were killed and many others injured. McShane sought a writ of habeas corpus on grounds that he could not be held by the state for conduct performed under an act of Congress. In determining whether McShane's conduct was necessary and proper under the circumstances the court held he would be entitled to release if he had an honest and reasonable belief that it was necessary to have tear gas fired into the crowd in order to discharge his lawful duty.

> *If, as here, the petitioner shows without dispute that he had no motive other than to discharge his duty under the circumstances as they appeared to him and that he had an honest and reasonable belief that what he did was necessary in the performance of his duty to see to the execution of the two court orders, then he is entitled to the relief he seeks.[]* This is so even though his belief was mistaken or his judgment poor. "For the mode or manner in which he performed the duty imposed upon him by the laws of the United States he cannot be called to account in a criminal case brought in state court, based on provisions of a state statute."

Id. at 274 (emphasis in original; citation omitted).

The court ruled that McShane could not be held answerable to the State of Mississippi because he was acting pursuant to specific orders from his superior and was under a statutory duty to assist in the execution of two federal court orders. In the circumstances that developed as the crowd grew violent, he had reasonable cause to believe that the use of tear gas was a proper measure in carrying out his duties. See also In re Fair, 100 F. 149 (D.Neb. 1900)(state may not prosecute infantry soldier for shooting and killing escaping prisoner when soldier followed orders to shoot if halt orders not obeyed; despite some question as to whether order to shoot properly given in light of Infantry Regulations, court held it was properly obeyed).

- 11 -

In the instant case, SA Horiuchi is charged with mistakenly shooting Vicki Weaver when he fired at Kevin Harris. SA Horiuchi's shot at Harris, whom he reasonably believed to have participated in the firefight that resulted in the death of Marshal Degan, and whom he believed to have brandished a weapon at a helicopter carrying federal officers, was reasonable under the circumstances. The state of Idaho has not alleged that SA Horiuchi acted with any criminal intent in firing the shot that killed Vicki Weaver. On the contrary, the State has specifically charged that SA Horiuchi acted "without malice." (See Criminal Complaint attached; emphasis added)

Based on the combination of the facts surrounding the murder of a deputy U.S. Marshal, the suspects' demonstrated willingness to resort to violence, and the perceived threat posed to the law enforcement personnel in the helicopter and in the vicinity of the Weaver cabin, SA Horiuchi acted within the course and scope of his authority when he discharged his weapon. He has not merely a "colorable," but a compelling federal defense to this prosecution. Accordingly, he is entitled to have this defense adjudicated in a federal forum.

4.     SA Horiuchi's actions as alleged in the Criminal Complaint and this Notice of Removal were justified under and within the scope of the Supreme Court's ruling in Tennessee v. Garner, 471 U.S. 1 (1985), that it is not unreasonable to use deadly force to prevent a felony suspect from escaping when there is probable cause to believe the suspect poses a threat of serious physical harm, either to the officer or others.

5.     SA Horiuchi's actions as alleged in the Criminal Complaint and this Notice of Removal were justified pursuant to the FBI's Deadly Force Policy in effect on August 22, 1992, which provided in part that agents could use deadly force against someone as "... necessary in

self-defense or for the defense of another, when they have reason to believe they or another are in

serious danger of death or grievous bodily injury."

WHEREFORE, SA Horiuchi, Petitioner herein, prays that the above action now pending

against him in the District Court of the First Judicial District of the State of Idaho in and for the

County of Boundary, be removed therefrom to this Court.

Robert C. Huntley
Patrick J. Miller
GIVENS, PURSLEY & HUNTLEY, L.L.P.
Suite 200, Park Place
277 North Sixth Street
P.O. Box 2720
Boise, Idaho  83701-2720
(208) 388-1200

Earl J. Silbert
Adam S. Hoffinger
Patricia L. Maher
Patrick deGravelles
SCHWALB, DONNENFELD & SILBERT
A Professional Corporation
1025 Thomas Jefferson St., N.W.
Suite 300 East
Washington, D.C.  20007
(202) 965-7910

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Notice of Removal was served by first class mail, postage prepaid, this _3/_ day of October, 1997 to:

Denise Woodbury, Esq.
Boundary County Prosecuting Attorney
Post Office Box 1148
Bonners Ferry, ID  83905

Robert C. Huntley

PROSECUTOR'S OFFICE
BOUNDARY COUNTY
P.O. BOX 1148
BONNERS FERRY, ID 83805
(208)267-7545

STATE OF IDAHO
COUNTY OF BOUNDARY

97 AUG 20 PM 4 08

CLERK COURT

BY _____
DEPUTY CLERK

IN THE DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT OF THE
STATE OF IDAHO, IN AND FOR THE COUNTY OF BOUNDARY
MAGISTRATE DIVISION

| | |
|---|---|
| STATE OF IDAHO, | CASE NO.: CR 97-14696 |
| Plaintiff, | |
| vs. | CRIMINAL COMPLAINT |
| LON T. HORIUCHI, | INVOLUNTARY MANSLAUGHTER I.C. 18-4006(2) |
| DOB: 06/09/54, | |
| Defendant. | |

PERSONALLY APPEARED before me this ___ day of August, 1997, CURTIS KASTENS, who being first duly sworn, complains and says:

That the defendant, LON T. HORIUCHI, on or about the 22nd day of August, 1992, in the County of Boundary, State of Idaho, did unlawfully, but without malice, kill Vicki J. Weaver, a human being, in the operation of a firearm in a reckless, careless or negligent manner, to wit: discharging the firearm through the front door of the Weaver residence in an attempt to shoot Kevin Harris as he entered the door from outside, without first

PAGE 1 - CRIMINAL COMPLAINT

determining whether any person other than his intended target was present on the other side of the door, a violation of I.C. 18-4006(2), a felony.

Said Complainant therefore prays that said defendant, LON T. HORIUCHI, be dealt with according to law.

C. KASTEN

CURTIS KASTENS
Complainant

SUBSCRIBED AND SWORN to before me this 20 day of August, 1997. AT APPROX 4:00 p.m.

MAGISTRATE JUDGE

BOND: $ SUMMON ISSUED

FPC#_____

PAGE 2 - CRIMINAL COMPLAINT

ORIGINAL

PROSECUTOR'S OFFICE
BOUNDARY COUNTY
P.O. BOX 1148
BONNERS FERRY, ID 83805
(208) 267-7545

IN THE DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT OF THE
STATE OF IDAHO, IN AND FOR THE COUNTY OF BOUNDARY
MAGISTRATE DIVISION

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | CASE NO.:  CR 97 14696 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | SUMMONS - - CRIMINAL |
| | ) | |
| LON T. HORIUCHI, | ) | INVOLUNTARY MANSLAUGHTER |
| | ) | I.C. 18-4006(2) |
| DOB:  06/09/54, | ) | |
| | ) | |
| Defendant, | ) | |

You are hereby notified that a Criminal Complaint, a copy of which is annexed hereto, has been filed with this Court in the above-entitled matter, wherein it is alleged that the above named defendant is charged with INVOLUNTARY MANSLAUGHTER, a violation of I.C. 18-4006(2).

You are hereby directed to call (208) 267-5504, within five (5) days after receipt of this Summons, to schedule an appearance in Court on this charge.

You are further notified that failure to comply with the instructions in this Summons shall result in a Warrant being issued for your arrest.

DONE in open Court this _20_ day of August, 1997.
AT APPROX 4:00 p.M

_____
MAGISTRATE

FPC#_____

PROSECUTOR'S OFFICE
BOUNDARY COUNTY
P.O. BOX 1148
BONNERS FERRY, ID 83805
(208) 267-7545



IN THE DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT OF THE
STATE OF IDAHO, IN AND FOR THE COUNTY OF BOUNDARY
MAGISTRATE DIVISION

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | CASE NO.: CR 97 14696 |
| Plaintiff, | ) | |
| vs. | ) | SUMMONS - - CRIMINAL |
| LON T. HORIUCHI, | ) | INVOLUNTARY MANSLAUGHTER |
| DOB: 06/09/54, | ) | I.C. 18-4006(2) |
| Defendant, | ) | |

You are hereby notified that a Criminal Complaint, a copy of
which is annexed hereto, has been filed with this Court in the
above-entitled matter, wherein it is alleged that the above named
defendant is charged with INVOLUNTARY MANSLAUGHTER, a violation of
I.C. 18-4006(2).

You are hereby directed to call (208) 267-5504, within five
(5) days after receipt of this Summons, to schedule an appearance
in Court on this charge.

You are further notified that failure to comply with the
instructions in this Summons shall result in a Warrant being issued
for your arrest.

DONE in open Court this 20 day of August, 1997.
AT APPROX 4:00 P.M

_____
MAGISTRATE

FPC#_____

Office of
# THE PROSECUTING ATTORNEY
### County of Boundary
P. O. Box 1148
Bonners Ferry, Idaho 83805-1148

*Denise Woodbury, Prosecuting Attorney*
*Todd Reed, Deputy Prosecuting Attorney*

*Telephone: (208) 267-7543*
*Facsimile: (208) 267-5284*

August 21, 1997

ADAM HOFFINGER
Attorney at Law
Facsimile (202) 337-0676

RE:  State of Idaho v. Lon T. Horiuchi
     Boundary County Case No:  CR-97-14696

Dear Mr. Hoffinger:

Earlier today, the Boundary County Prosecuting Attorney's
Office faxed the Complaint, Summons and copy of the Summons in the
above entitled matter to your office. Please cause service of the
Summons on Lon Horiuchi by leaving with Lon Horiuchi the copy of
the Summons and the Complaint.

Please have Lon Horiuchi sign an Acceptance of Service and
return it along with the Original Summons via mail to our office as
soon as possible for filing with the Court.

As stated in the Summons, Lon Horiuchi must contact the Clerk
of Court at (208) 267-5504 within five (5) days of acceptance to
schedule an appearance on this charge.

If you have any further questions, feel free to call.

Very truly yours,

DENISE WOODBURY
Prosecuting Attorney

DW/cw

PROSECUTOR'S OFFICE
BOUNDARY COUNTY
P.O. BOX 1148
BONNERS FERRY, ID 83805
(208) 267-7545

IN THE DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT
OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF BOUNDARY
MAGISTRATE   DIVISION

STATE OF IDAHO,                    :
                    Plaintiff,     :     CASE NO.   CR-97-14696
                                   :
vs.                                :     ADMISSION OF SERVICE
                                   :
LON T. HORIUCHI,                   :
                    Defendant.     :
_____:

        The undersigned, LON T. HORIUCHI, hereby admits the service of

and receipt of a copy of the Criminal Summons and a copy of the

Criminal Complaint in the above encaptioned case.

        DATED this ___ day of _____, 1997.


                                   _____
                                   LON T. HORIUCHI



1.   ADMISSION OF SERVICE

STATE   OF   _____ :
                                    :ss
County of _____ :

    On this ___ day of _____, 19__, before me, the undersigned
Notary Public for _____, personally appeared _____,
known to me to be the person whose name is subscribed to the within
instrument and acknowledged to me that he executed the same.

                                        Notary Public for _____
                                        Residing in _____
                                        My Comm. Exp.:_____

2.  ADMISSION OF SERVICE

PROSECUTOR'S OFFICE
BOUNDARY COUNTY
P.O. BOX 1148
BONNERS FERRY, ID 83805
(208) 267-7545

IN THE DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT
OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF BOUNDARY
MAGISTRATE DIVISION

STATE OF IDAHO,                          :
                        Plaintiff,       :     CASE NO.  CR-97-14696
                                         :
vs.                                      :     ADMISSION OF SERVICE
                                         :
LON T. HORIUCHI,                         :
                        Defendant.       :
                                         :

     The undersigned, LON T. HORIUCHI, hereby admits the service of

and receipt of a copy of the Criminal Summons and a copy of the

Criminal Complaint in the above encaptioned case.

     DATED this _6th_ day of _October_ , 1997.

                                    _____
                                    LON T. HORIUCHI


1.  ADMISSION OF SERVICE

*City*

~~STATE~~ OF _____ :

*Washington DC* _____ :ss

County of *DC* _____ :

On this *6th* day of *October*, 19*97*, before me, the undersigned
Notary Public for *Washington DC*, personally appeared *Lon Horiuchi*,
known to me to be the person whose name is subscribed to the within
instrument and acknowledged to me that he executed the same.

_____
Notary Public for *Washington DC*
Residing in _____
My Comm. Exp.:_____

DONNIE C. ANDERSON
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires April 14, 2000

2.   ADMISSION OF SERVICE

ORIGINAL

PROSECUTOR'S OFFICE
BOUNDARY COUNTY
P.O. BOX 1148
BONNERS FERRY, ID 83805
(208) 267-7545

IN THE DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT OF THE
STATE OF IDAHO, IN AND FOR THE COUNTY OF BOUNDARY
MAGISTRATE DIVISION

STATE OF IDAHO,                    )     CASE NO.:  CR 97 14696
                                   )
                Plaintiff,         )
                                   )
vs.                                )
                                   )     SUMMONS - - CRIMINAL
LON T. HORIUCHI,                   )
                                   )     INVOLUNTARY MANSLAUGHTER
DOB:  06/09/54,                    )     I.C. 18-4006(2)
                                   )
                Defendant,         )
                                   )

        You are hereby notified that a Criminal Complaint, a copy of
which is annexed hereto, has been filed with this Court in the
above-entitled matter, wherein it is alleged that the above named
defendant is charged with INVOLUNTARY MANSLAUGHTER, a violation of
I.C. 18-4006(2).

        You are hereby directed to call (208) 267-5504, within five
(5) days after receipt of this Summons, to schedule an appearance
in Court on this charge.

        You are further notified that failure to comply with the
instructions in this Summons shall result in a Warrant being issued
for your arrest.

        DONE in open Court this 20 day of August, 1997.
        AT APPROX 4:00 P.M

                                   _____
                                   MAGISTRATE

FPC#_____