FAX FILED

U. S. COURTS

FEB 26 1998

REC'D _____ FILED _____
CAMERON S. BURKE
CLERK IDAHO

O'MELVENY & MYERS LLP
555 Thirteenth Street, N.W.
Suite 500 West
Washington, D.C. 20004-1109
(202) 383-5300

Attorneys for *Amici Curiae*
Hon. William P. Barr, Hon.
Griffin B. Bell, Hon. Benjamin
R. Civiletti, Hon. Richard L. Thornburgh,
and Hon. William H. Webster

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STATE OF IDAHO, | ) |
| Plaintiff, | ) |
| v. | ) No. CR-97-097-N-EJL |
| LON T. HORIUCHI, | ) |
| Defendant. | ) |

MEMORANDUM OF POINTS AND AUTHORITIES
ON BEHALF OF *AMICI CURIAE*[1] IN SUPPORT OF
SPECIAL AGENT LON T. HORIUCHI'S MOTION TO DISMISS

*Amici Curiae* submit the following in support of dismissing a criminal information brought by the State of Idaho against Federal Bureau of Investigation

---

[1] *Amici curiae* include, alphabetically, Hon. William P. Barr, former Attorney General of the United States (1991-93); Hon. Griffin B. Bell, former Attorney General of the United States (1977-79) and former Judge of the U.S. Court of Appeals for the Fifth Circuit (1961-76); Hon. Benjamin R. Civiletti, former Attorney General of the United States (1979-81); Hon. Richard L. Thornburgh, former Attorney General of the United States (1988-91); Hon. William H. Webster, former Director of Central Intelligence (1987-91), former Director of the Federal Bureau of Investigation (1978-87), former Judge of the United States Court of Appeals for the Eighth Circuit (1973-78), and former Judge of the U.S. District Court (E.D. Missouri) (1971-73).

("FBI") Special Agent Lon T. Horiuchi ("Agent Horiuchi") and pending in this Court. Agent Horiuchi is entitled to immunity under the Supremacy Clause of the U.S. Constitution for the reasons set out in his Brief in Support of his Motion to Dismiss and the Justice Department's Memorandum in Support thereof. This memorandum focuses on another related and fundamental Constitutional principle that controls the instant case and mandates dismissal: where state action interferes with plainly enunciated federal goals, the state action is preempted.

The United States has an overriding interest in controlling and coordinating the activity of federal law enforcement personnel. Only a uniform body of rules, regulations, and guidelines can ensure effective functioning of such personnel who are forced to act throughout the several states. Application of state criminal process conflicts with this interest and is therefore preempted.

It is impossible to imagine a more chilling circumstance than the one presented by the instant effort to prosecute. Here, federal officials have determined that Agent Horiuchi was acting within the scope of his federal authority. (See Announcement by Dept. of Justice (Aug. 15, 1997) (attached to Agent Horiuchi's Memorandum at Exhibit D).) Idaho's charge specifically alleges that the death upon which the prosecution is premised was unintentional and the result of a shot fired without malice. The sniper's job in law enforcement requires split-second judgement that must depend exclusively on his/her federal training and policy. To subject the performance of that function to second-guessing in the context of a state criminal action is to severely undermine, if not cripple, the ability of future Attorneys General to rely on such specialized units in moments of crisis such as hostage taking and terrorist acts. Indeed,

the devastating effect of allowing the instant prosecution to proceed could well include endangering the life of the President of the United States in the moment when the sharpshooters responsible for protecting that life hesitate to consider what state they are in when evaluating a threat to the President.

## ARGUMENT

### FEDERAL LAW PREEMPTS STATE CRIMINAL PROSECUTIONS OF FEDERAL LAW ENFORCEMENT PERSONNEL FOR ACTS COMMITTED IN THE COURSE OF PERFORMANCE OF OFFICIAL RESPONSIBILITIES.

A.   State Action That Conflicts With Federal Policy is Preempted.

Where a state law conflicts with federal law by "stand[ing] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," that state law is preempted. Hines v. Davidowitz, 312 U.S. 52, 67 (1941); see generally Fidelity Fed. Savs. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152-53 (1982). Even where it is physically possible for individuals to comply with both state and federal regulation, state action will not be permitted to frustrate important federal goals. To determine whether there exists such a conflict, a court must examine the full range of federal activity in a given field to discern the goals of the national government. Hillsborough County, Fla. v. Automated Med. Labs, Inc., 471 U.S. 707, 713 (1985). (recognizing that federal regulations may have preemptive effect no less than federal statutes). In conducting this examination, a manifest need for national uniformity will constitute powerful evidence in favor of finding preemption of state laws that would impose heterogenous obligations. See, e.g., Ray v. Atlantic Richfield Co., 435 U.S. 151, 168 (1978) (state law interfering with effort to create uniform standards for certain vessels held preempted).

3

### B. Congress Has Struck the Balance Between Effective Federal Law Enforcement and Appropriate Restraints On Federal Enforcement Personnel.

Effective federal law enforcement is the product of a single federal government enforcing criminal laws of nationwide scope. In establishing the Constitution, the framers recognized the need for a stronger national government than that afforded by the Articles of Confederation. Consistent therewith, the First Congress created the Office of the Attorney General[2] with the purpose of meeting the "need for the centralization in one office of the conduct of the sovereign's legal business."[3]

To enhance the coordination of the conduct of the nation's legal business, Congress created the Department of Justice in 1870[4] to "establish a staff of law officers sufficiently numerous and of sufficient ability to transact [the] law business of the Government in all parts of the United States."[5] Uniformity was a central concern at the time. Significantly, one of the concerns expressed in debate was the need to eliminate the existence of "one interpretation of the laws of the United States in one Department and another interpretation in another Department."[6] Thus it was "for the purpose of having a unity of decision, a unity of jurisprudence . . . in the executive law of the United

---

[2] See Act to Establish the Judicial Courts of the United States, ch. 20, 1 Stat. 73 (1789).

[3] Department of Justice Manual, Vol. 1, ch. 1, § A-1.100 at A-11.

[4] Act to Establish the Department of Justice, ch. 150, 16 Stat. 162 (1870).

[5] Congressional Globe, 41st Cong., 2d Sess. 3035 (1987) (Statement of Rep. Jenckes).

[6] Id. at 3036 (Statement of Rep. Jenckes).

4

States that this bill propose[d] that all the law officers therein provided for shall be subordinate to one head."[7] Since 1870, the investigation of federal crime has been largely (and the prosecution of federal crime wholly) concentrated in the Justice Department under the direction of the Attorney General, an office held by four of the submitting *amici*.

Within the Department of Justice, Congress created the FBI to serve as the federal government's primary investigative body. The FBI's creation in 1908 was in direct response to Attorney General Charles Bonaparte's request that his office directly control federal criminal investigators.[8] Similarly, federal anti-drug efforts were placed under the supervision of the Attorney General in 1973[9] "to mount a more effective attack on illicit drugs by establishing 'a single command post with the authority to direct all Federal drug enforcement.'"[10]

The prime importance of a unitary approach to federal criminal law enforcement was confirmed in the modern era by Executive Order of President Lyndon Johnson in 1968. In assigning to the Attorney General the duty to coordinate the law enforcement and crime prevention activities of all federal departments and agencies, the

---

[7] Id.

[8] Department of Justice Manual, Vol. 1, ch. 1, § A-1.100 at A-28.

[9] Reorganization Plan No. 2 of 1973, 5 U.S.C.App. at 1564 § 1 (1994).

[10] H.R. Rep. No. 93-228, Hearings Before a Subcomm. of the Comm. on Gov't. Operations, 93d Cong. 3 (1973) (Statement of Richard G. Kleindienst, Attorney General of the United States).

5

President declared that "coordination of all Federal criminal law enforcement activities and crime prevention programs is desirable in order to achieve more effective results."[11]

This national system exists to enforce laws that are, in turn, national in scope. Most criminal activity is purely local, beyond the province, resources, and possibly even constitutional reach of the national government.[12] Nonetheless, the national government has the unique capacity, in the field of law enforcement as elsewhere, to act effectively across state lines. Where Congress has enacted criminal statutes, it has done so to address evils that do not respect state boundaries.[13] Sometimes, Congress has explicitly adverted to the national scope of criminal activity when expanding the reach of the federal criminal law.[14] What is critical for present purposes is that the enforcement of the federal criminal laws frequently requires individual federal enforcement personnel to operate in more than one state. It is this signal feature of federal -- in contrast with state -- law enforcement activity that counsels the position urged on the Court today.

C. **Applying State Criminal Law in These Circumstances Undermines Effective Federal Criminal Law Enforcement.**

---

[11] Executive Order No. 11396, 33 Fed. Reg. 2689 (1968).

[12] See generally, United States v. Lopez, 514 U.S. 549 (1995) (invalidating federal criminal statute prohibiting possession of firearms in school zones as beyond Congressional Commerce Clause authority).

[13] See, e.g., 18 U.S.C. § 1343 (1994) (criminal wire fraud statute; requiring proof of "communication in interstate ... commerce").

[14] See, e.g., Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 922 (noting, at the time of the adoption of the Racketeer Influenced and Corrupt Organizations Act, the "widespread" nature of organized crime and its effect on the national economy).

Congress has struck a careful balance to ensure both effective federal law enforcement and appropriate regulation and restraint thereof. Federal law enforcement personnel operate in all fifty states under an elaborate system of federal legal and departmental restraints that apply with equal force throughout the land. This includes, preeminently, the U.S. Constitution, and also Title 18 of the U.S. Code (codifying federal criminal law), the Federal Rules of Criminal Procedure and Evidence, and various department- and agency-specific manuals.[15]

In cases where federal officials violate federal law, the federal system provides specific remedies against the individual and even the sovereign. (See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (confirming a civil claim for relief in federal court against federal agents); 18 U.S.C. § 242 (1994) (providing for federal prosecution for the deprivation of constitutional rights); and the Federal Tort Claims Act, 28 U.S.C. § 2671 (1994) et seq.[16]

Within these constraints, federal law enforcement personnel are trained to investigate crime to the fullest extent of the law. This is the balance that Congress has fashioned over 200 years to ensure effective federal law enforcement. State criminal prosecutions of federal agents under these circumstance disrupt this balance and are therefore preempted. See Hisquierdo v. Hisquierdo, 439 U.S. 572 (1979) (federal system

---

[15] Like other federal law enforcement agencies, the FBI is additionally governed by numerous policies and procedures promulgated by the Attorney General and the Director of the FBI, many of which are collected in voluminous policy and procedure manuals.

[16] In this context, Harris v. Roderick, 126 F.3d 1189 (9th Cir. 1997), cert. denied, 66 U.S.L.W. 3458 (Feb. 23, 1998) merely confirms the availability of federal remedies.

7

for retirement benefits for railroad workers struck balance among competing federal concerns; state community property laws that disrupted balance held preempted).

By way of example, prosecutions under state law for activity sanctioned by federal law would discourage personnel from the performance of effective electronic surveillance, a vital tool in the war on crime. The federal wiretap statute establishes federal law governing the interception of communications and their introduction into evidence in a federal criminal proceeding. See 18 U.S.C. § 2511 (1994). State laws criminalizing wiretapping are frequently more restrictive than their federal counterpart. Defendants in federal criminal proceedings accordingly move to suppress evidence gathered pursuant to federal law on the grounds that the wiretap, though consistent with federal law, violated state law. Federal courts have consistently rejected that contention, finding that the Supremacy Clause ensures that compliance with the federal standard is a sufficient basis for sustaining the admissibility of wiretap evidence. See, e.g., United States v. Hall, 543 F.2d 1229, 1232 (9th Cir. 1976) (*en banc*). It would be illogical to suggest that where no state law can prevent the admission of evidence in federal court that is legally gathered under federal law, that same state law can be used to criminally deter the federal official from gathering the same evidence. It would be similarly illogical to establish a precedent wherein state criminal law could deter the Secret Service from protecting the life of the President, particularly where it has been consistently held that state criminal law could not be applied to deter the U.S. Marshals from protecting federal judges (Cunningham v. Neagle, 135 U.S. 1 (1890)), federal officers from apprehending fleeing felons (Clifton v. Cox, 549 F.2d 722 (9th cir. 1977)),

8

and federal officials from protecting the civil rights of minorities (In re McShane's Petition, 235 F. Supp. 262 (N.D. Miss. 1964)).

Putting federal personnel at risk of state criminal prosecution in this manner would significantly impede effective law enforcement. Agents would be understandably reluctant to engage in necessary law enforcement activity out of fear that they could be arrested, prosecuted, and imprisoned -- for doing their job in a manner consistent with federal law and guidelines. This risk would chill law enforcement activity at every stage: individuals will be discouraged from applying for positions; qualified incumbents will tire of the risks of state prosecutions; and, most dramatically, agents will be forced to hesitate in the field.

Finally, the Court should consider the practical impact of the State's theory on the facts before it. Idaho's peace officers (like peace officers in many jurisdictions) have an obligation to arrest individuals who commit felonies in their presence. Monson v. Boyd, 81 Idaho 575, 578-79 (1959) (construing former I.C. § 19-603). The theory of this prosecution is that Agent Horiuchi is a felon because no reasonable person would have fired his weapon in the circumstances in which Agent Horiuchi found himself. Under Idaho law, if an Idaho trooper had been on the hillside with Agent Horiuchi at the time of the shooting, that trooper would have had an affirmative obligation to arrest or at least attempt to prevent Agent Horiuchi from committing the act they are now charging as a state felony. Yet such arrest or attempt would have subjected the state trooper to federal prosecution for interfering with the conduct of a federal law enforcement official. (See 18 U.S.C. § 1512(c)(3) (forbidding interference with the execution of an arrest warrant) and 18 U.S.C. § 111 (general statute forbidding

9

interference with federal officer in performance of duties).) Thus, Agent Horiuchi is being subjected to prosecution for an act which could only be interfered with by Idaho officials at the risk of federal criminal prosecution of those officials. This would be an absurd result, but it demonstrates the gravity of what the State of Idaho undertakes by seeking to prosecute a federal law enforcement official for performing his duties. Interference through post hoc prosecution would accomplish indirectly that which federal law precludes state officials from accomplishing directly.

## CONCLUSION

For the foregoing reasons, *amici curiae* respectfully move this Court to dismiss the State of Idaho's criminal information against Agent Lon T. Horiuchi.

DATE: February 25, 1998

Respectfully submitted,

Arthur B. Culvahouse, Jr.
O'MELVENY & MYERS LLP
555 Thirteenth Street, N.W.
Suite 500 West
Washington, D.C. 20004-1109
(202) 383-5300

Attorneys for *Amici Curiae*
Hon. William P. Barr, Hon.
Griffin B. Bell, Hon. Benjamin
R. Civiletti, Hon. Richard L. Thornburgh
and Hon. William H. Webster.